IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**AMELIA STEWART**
**on behalf of T.D.F**                                                                       **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO.  3:14CV349 CWR-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**


**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Amelia Stewart appeals the final decision denying the application for Supplemental Security Income ("SSI") that she filed on behalf of her minor son, T.D.F. The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be remanded.

**Facts and Procedural Background**

On June 18, 2009, Plaintiff filed an SSI application alleging that her son, T.D.F., born prematurely at 35 weeks, is entitled to disability benefits for asthma and sickle cell disease.  Following denials of her application, Plaintiff filed a second application for SSI benefits on September 7, 2010, alleging that T.D.F. had been disabled since his date of birth on May 9, 2009, for the same conditions.  The application was denied initially and on reconsideration.  She appealed the denial, and on February 21, 2013, an Administrative Law Judge ("ALJ") rendered an unfavorable decision, finding that T.D.F.

was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review and she now appeals that decision. T.D.F. was one month old when his first application was filed, 16 months old when his second application was filed, three years old when the ALJ conducted the administrative hearing, and is currently five years old.

## Childhood Disability Standard

In order for a child to be found disabled and entitled to SSI benefits, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). When evaluating a child's eligibility for disability benefits, an ALJ engages in a three-step sequential process, which considers:

(1) whether the child is doing substantial gainful activity;

(2) if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and

(3) if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d). If a child's impairment does not meet, medically equal, or functionally equal a listed impairment, the child will not be considered disabled. Functional equivalency is measured according to six domains of function: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6)

health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley* 493 U.S. 521, 530-32 (1990)). To be functionally equivalent to a listing, the impairment must result in either a "'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain . . . ." 20 C.F.R. § 416.926a(a). A marked limitation interferes seriously with the child's ability to "independently initiate, sustain, or complete activities," while an extreme limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §§ 416.926a(e)(2)(i) & 416.926a(e)(3)(i).

Upon reviewing the evidence, the ALJ concluded that T.D.F. was not disabled under the Social Security Act and was not entitled to childhood disability benefits pursuant to 20 C.F.R. § 416.924(a). At step one of the three-step sequential evaluation process, the ALJ found that he had not engaged in substantial gainful activity since September 17, 2010, the application date. At steps two and three, the ALJ found that while T.D.F.'s asthma and sickle cell disease were severe impairments, the medical evidence did not support listing-level severity. With regard to the six functional domains, the ALJ concluded that Plaintiff had less than marked limitations in caring for himself and health and physical well-being, and no limitations in any other domain.

## Standard of Review

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2)

whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d. 243, 245 (5th Cir. 1991)). *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Fifth Circuit defines substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Any findings by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

## Discussion

Plaintiff alleges that the ALJ erred in failing to find that her son did not (1) meet, (2) medically equal, or (3) functionally equal Listings 107.03 and/or 107.05 for hemolytic anemia and sickle cell disease. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1., § § 107.03. & 107.05. She also alleges that the ALJ and Appeals Council erred in failing to rule on her request to reopen T.D.F.'s prior application for SSI benefits.

### A. Whether substantial evidence supports the ALJ's findings that the claimant's impairments did not meet the Listings.

To meet Listing 107.03 for hemolytic anemia, a claimant must show a "persistence of hematocrit of 26 percent or less despite prescribed therapy and reticulocyte count of 4 percent or greater." 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 107.03. To meet Listing 107.05 for sickle cell disease, a claimant must show one of the following:

> A. Recent, recurrent, severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal); or
>
> B. A major visceral complication in the 12 months prior to application; or
>
> C. A hyperhemolytic or aplastic crisis within 12 months prior to application; or
>
> D. Chronic, severe anemia with persistence of hematocrit of 26 percent or less; or
>
> E. Congestive heart failure, cerebrovascular damage, or emotional disorder as described under the criteria in 104.02, 111.00ff, or 112.00ff.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 107.05.

In determining that T.D.F. did not meet Listings 107.03 and 107.05(D), the ALJ found that the objective evidence showed only "sporadic hematocrit levels of 26 percent or less." Plaintiff argues that, contrary to the ALJ's determination, the medical evidence shows that he was treated for various sick-cell related ailments since his birth in May 2009, and that he had the requisite persistent hematocrit levels of 26 percent or less, and numerous levels that were only slightly above 26 percent as well.

The undersigned notes that Plaintiff had the requisite hematocrit levels three times within a four-day hospital stay from December 28, 2011-December 31, 2011, and four times within a five-day hospital stay from November 28, 2011-December 3, 2011. The record reflects that the claimant also had the requisite hematocrit levels on approximately five other dates in three years. With regard to whether T.D.F. had the requisite reticulocyte count to meet the anemia listing, Plaintiff cites two instances where T.D.F.'s reticulocyte counts was higher than 4 percent within the three-year period: December 2011 and June 2012. Thus, Plaintiff appears to have had the requisite reticulocyte count

5

only twice in three years, although the ALJ did not consider this count in her opinion.[1]

The listings do not quantify what it means to have a hematocrit level "persistently" at 26 percent or less. But given the evidence as stated, the ALJ did a thorough job of listing each of the doctor's visits and the complaints, as well as all of the hematocrit readings. Based on the evidence, the ALJ reasonably concluded that T.D.F. did not have a persistence of hematocrit of 26 percent or less. Thus, the ALJ did not err in finding that T.D.F. did not meet Listing 107.03 or 107.05 (D).

> **B.** **Whether substantial evidence supports the ALJ's findings that the claimant's impairments did not medically equal the Listings**.

As to medical equivalance, the ALJ explains why T.D.F.'s sickle cell disease does not meet the listings, but he does not explain why his impairments do not medically equal the listings, except for a brief statement that his growth and development have not been impacted despite sickle cell exacerbations. Although an ALJ is not required to conduct a point-by-point discussion, such statements thwart meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448) (5th Cir. 2007). The Court notes that state agency consultants indicated that the claimant's impairments do not medically equal the listings. However, the consultant's opinions are dated January and March 2011, prior to the sickle cell exacerbations and hospitalizations documented in the record. At a minimum, Plaintiff contends that given the number of medical visits and hospitalizations in the first three years of T.D.F.'s life, the ALJ should have found that his impairments were medically

---

[1] ECF No. 10, pp. 202-231, 238-265, 272-296, 304-321, 324-450, 453-505.

equal to Listings 107.03 and 107.05 (A), (C), and (D). But it is not the Court's role to weigh the evidence. The responsibility for deciding medical equivalence rests with the ALJ, and his determination that Plaintiff's impairments did not medically equal the listings should be remanded further development. 20 C.F.R. § 416.926 (e). On remand, the ALJ should set forth with greater specificity his findings with regard to medical equivalence, taking care to link his findings to specific evidence.

### C. Whether the ALJ properly evaluated the medical opinion evidence.

Plaintiff also argues that the ALJ failed to properly weigh the medical opinion of her treating physician, Dr. Joy Jackson. In his step three analysis, the ALJ stated that he considered the opinion of T.D.F.'s treating physician, Dr. Joy Jackson, but gave deference to the opinion of pediatric expert, Dr. William Silberberg. In December 2011, Dr. Jackson submitted a Sickle Cell Disease Questionnaire indicating that T.D.F.'s sickle cell disease met the listing criteria for 107.5 (A), (C) and (D). Specifically, she noted that T.D.F. had experienced recent, recurrent, severe vaso-occlusive crises. She cited as evidence, his hospitalization from November 30, 2011, through December 3, 2011, for abdominal pain, and the fact that he had been "treated at home for sickle pain crises in the past." She also noted that this recent hospitalization was a hyperhemolytic or aplastic crisis occurring within the last 12 months; and that, contrary to the ALJ's determination, T.D.F. had chronic, severe anemia with persistence of hematocrit levels of 26 percent or less. Dr. Jackson has treated T.D.F. since July 2009, and her opinion is the only opinion

from a treating or examining physician of record.[2]

In assessing Dr. Jackson's opinion, the ALJ briefly noted that she was a family practitioner. He then proceeded to assign controlling weight to the opinion of Dr. Silberberg, who concluded that T.D.F. did not meet Listing 107.05. Dr. Silberberg, whose opinion was submitted in response to interrogatories following the administrative hearing, opined in relevant part that: "Although there were two hospitalizations in 11/2011, and 12/2011 which are both recent, and recurrent, and the hospitalization of 11/2011 noted an acute abdomen, the hospitalization did not demonstrate a severe vaso-occlusive crisis." As to functional equivalence, Dr. Silberberg also opined that T.D.F. had less than marked limitations in his ability to care for himself and in health and physical well-being, and no limitations in any other domain. Plaintiff contends that had the ALJ complied with 20 C.F.R. § 404.1527, Dr. Jackson's opinion would be entitled to more weight because it was supported by the medical evidence, and was not contradicted by any other treating or examining physician.[3]

A treating source's opinion is entitled to great weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *Giles v. Astrue,* 433 F. App'x 241, 246 (5th Cir. 2011) (unpublished) (quotation omitted). But the treating physician's

---

[2]ECF No. 10, pp. 322-323.

[3]*Id.* at 504-508.

opinions are not conclusive. *Pineda v. Astrue*, 289 F.App'x 710, 713 (5th Cir. 2008). A treating physician's opinion is given controlling weight when it is "well-supported by medical acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Here, the ALJ briefly mentions that he "considered the opinion evidence in accordance with 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5, 96-6p and 06-3p,"[4] but he does not mention the 20 C.F.R. § 404.1527 factors, which require ALJs to consider the length of a physician's treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and the supportability of the physician's opinion in weighing medical source opinions. *Newton* specifically states that the statutory steps must be followed "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." 209 F.3d at 453; *see also Quallls v. Astrue*, 339 F.App'x. 461, 466 (5th Cir. 2009). Post *Newton* cases have clarified, however, that the statutory analysis is required only in the absence of competing first-hand medical evidence.

The undersigned notes that Dr. Jackson's opinion is a form report with minimal record citation or narrative explanation. She cites the claimant's November 2011 hospitalization as evidence supporting 107.05 (A) and 107.05 (C); and, she notes that he has been treated for sickle cell pain crises at home as additional evidence to support

---

[4]ECF No. 10, p. 18.

107.05(A).  "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [but when] these so-called reports 'are unaccompanied by thorough written reports, their reliability is suspect.'" *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) (quoting *Brewster v. Heckler*, 786 F.2d 581 (3rd Cir. 1986)).  As noted by the ALJ, Dr. Jackson is also a family practitioner, and despite her assessment that T.D.F.'s November 2011 hospitalization constituted a severe vaso-occlusive crises, she did not treat him during his hospitalization in November 2011.

It is well settled that the "opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton,* 209 F.3d at 455 (citation omitted).  And, although Dr. Silberberg has never examined or treated T.D.F., the diagnosis of the attending physician for the November 2011 hospitalization was "sickle cell disease with pain crises; acute abdomen, resolved."  It was within the ALJ's discretion to accept Dr. Silberberg's assessment of this first-hand medical evidence over that of Dr. Jackson's in determining that Plaintiff's November 2011 hospitalization was not a severe vaso-occlusive crises.[5]

However, the ALJ erred in accepting Dr. Silberberg's opinion in its entirety.  Dr. Silberberg's opinion, which post-dates the administrative hearing, was based solely on the medical evidence to the apparent exclusion of the testimony of T.D.F.'s mother, who testified that he experienced crises at home -- a factor considered by Dr. Jackson in

---

[5]ECF No. 10, pp. 305, 322, 451.

rendering her assessment. *Shinn v. Commr. of Soc. Sec.*, 391 F.3d 1276, 1287 (11th Cir. 2004) (ALJ should have considered testimony of claimant's mother as to the repeated crises for which claimant was treated at home, instead of relying on opinions of state physicians who based their conclusions solely on the medical evidence). Dr. Silberberg also failed to address whether the claimant had experienced a hyperhemolytic or aplastic crises within 12 months prior to his application to satisfy 107.05(C). He addresses only whether T.D.F. had recent, recurrent severe vaso-occlusive crises to meet 107.05(A), and whether he had the requisite limitations to functionally equal the listings. While the ALJ was warranted in giving deference to Dr. Silberberg's opinion that the claimant's November 2011 hospitalization was not a severe vaso-occlusive crises, nothing of record directly refutes Dr. Jackson's assertion that the claimant experienced crises at home, or satisfies 107.05 (C). It was error, therefore, for the ALJ to adopt Dr. Silberberg's opinion in its entirety without addressing these deficiencies. Accordingly, this matter should be remanded for further development and proper evaluation of the medical opinion evidence.

      **D.**    **Whether substantial evidence supports the ALJ's findings that the claimant's impairments did not functionally equal the Listings.**

Next, Plaintiff challenges the ALJ's finding that the claimant's impairments did not functionally equaled the listings, specifically that T.D.F.'s sickle cell disease did not cause an extreme limitation in the domain of health and physical well-being. In support,

Plaintiff cites T.D.F.'s repeated need for medical attention for his complications related to sickle cell disease, i.e., treatment for upper respiratory infections, viral infections, leukocoytosis, abdominal pain, leg and arm pain, foot pain and swelling. She highlights the fact that he has been prescribed Tylenol with Codeine for pain, and treated approximately 38 times over the course of three years, including two hospitalizations in less than one month. Additionally, Plaintiff contends that T.D.F.'s sickle cell limitations rise to the same level as the 3 year-old claimant in *Cole ex rel. S.W. v. Astrue*, Civil Action No. 10-4229-CV-C-JSC-SSA, 2012 WL 930817, at *4 (W.D. Mo., 2012). There, the court found:

> [T]he medical records provide sound documentation that plaintiff's sickle cell disease causes an extreme limitation in the domain of health and physical well-being. Despite notations that she did well, that she appeared stable at certain times, and that her mother provided excellent care for her, there is more than ample evidence in the doctor's records to support a finding of an extreme limitation. These include the fact that a three-year old child has a serious disease, has experienced three hospitalizations for pain crises, has to take prescribed medication with codeine to control pain, cannot be around other children her age because of her great risk of developing severe infections, has to take antibiotics that cause side effects, has swelling that causes pain and affects her ability to walk normally, and has other health issues because of the disease.

*Id.*, at *4. The Commissioner responds that the ALJ's decision is supported by substantial evidence and Plaintiff's argument has no merit. The Court disagrees.

The ALJ's stated basis for finding that T.D.F.'s had less than a marked limitation in the health and physical well-being domain is that his "sickle cell exacerbations are sporadic and have not impacted his growth and development, and the other records for follow-up show that he was doing well." However, Social Security Ruling 09-8P

provides that "[u]nlike the other five domains of functional equivalence (which address a child's abilities), *this domain does not address typical development* and functioning," but instead "addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body. . . ." SSR 09-8p, 2009 WL 396030, at * 2 (Feb. 17, 2009) (emphasis added). Among the examples cited are "periodic exacerbations from an impairment(s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia)." *Id.* 20 C.F.R. § 416.926a(1)(4)(i)-(v). The regulations also acknowledge that a condition may be "chronic with stable symptoms, or episodic with periods of worsening and improvement." 20 C.F.R. § 416.926a(l)(3).

Despite citing the applicable rulings and regulations, the ALJ determined that T.D.F. has less than marked limitations in health and well-being, in-part, because his sickle cell exacerbations were "sporadic" and have "not impacted his growth and development."[6] The ALJ's analysis fails to mention the claimant's recurrent illnesses, medication side-effects, and ongoing treatment for sickle cell complications as contemplated by SSR 09-8p, and fails to thoroughly address the observations of T.D.F.'s mother who testified that T.D.F. experiences sickle cell pain crises at home.

The claimant's mother testified that T.D.F. experiences sickle cell pain crises every two to three months that last on average 3-4 days. The resulting pain is reportedly so bad that T.D.F. experiences a loss of appetite, and does not want to be touched, and

---

[6]ECF No. 10, pp. 28-29.

doing so, causes him to scream. Significantly, she testified that he does not go to daycare and that she was advised by doctors to treat him at home when he has these episodes, which she claims is most of the time.

The ALJ concluded that the testimony from T.D.F.'s mother concerning the intensity, persistence, and limiting effects of his symptoms was not entirely credible. He noted that while she reported frequent exacerbations, the objective medical evidence showed "only a few exacerbations requiring hospitalization, some where he was actually seen in the emergency room or by his primary care physician," and that follow-up records indicate that he was doing well for the most part. However, the ALJ did not directly address the mother's testimony that T.D.F. experiences episodes at home. Such testimony is relevant for two reasons.

First, in determining that the claimant's impairments did not functionally equal the listings, the ALJ appears to have adopted Dr. Silberberg's opinion that Plaintiff had less than a marked limitation in health and physical well-being; however, as noted *supra*, Dr. Silberberg's opinion was based solely on the medical evidence to the apparent exclusion of the testimony of T.D.F.'s mother. Second, Dr. Jackson cited T.D.F.'s at-home pain episodes as evidence of recent, recurrent, severe vaso-occlusive crises to meet 107.05(A) -- a factor that was not considered by Dr. Silberberg in his assessment. *See Shinn*, 391 F.3d at 1282-87 (testimony from the claimant's mother regarding apparent episodes of vaso-occlusive crises, for which the claimant was not hospitalized or treated

at the hospital, was relevant and should have been considered by the ALJ on the issue of whether the claimant met Listing 107.05(A)); *Jackson v. Astrue*, Civil Action No. 3:08CV860-SRW, 2010 WL 1489384, at *4-5 (M.D. Ala., 2010) (remanding where ALJ failed to question sickle-cell claimant's unrepresented mother and grandmother concerning clamant's at-home episodes thereby failing in his special duty to explore all relevant facts); *L.H., Jr.,* 2008 WL 2785489 (noting that of the two hospitalizations not duplicated in hospital records, one can be independently verified in the testimony of claimant's mother); *Barreto ex rel. Rivas v. Barnhart*, 2004 WL 1672789, at *5 (S.D.N.Y., 2004) (reversible error where ALJ failed to consider testimony from claimant's mother concerning claimant's functional limitations).

    In sum, the ALJ's failure to consider the claimant's at-home episodes undermines not only his determination that the claimant did not meet 107.05(A), but his finding that the claimant did not functionally equal the listings. The evidence of record, including the objective medical evidence and the observations of the claimant's mother, do not support the ALJ's determination that the claimant had less than a marked limitation in physical health and well-being. At a minimum, the ALJ failed to fully consider SSR 09-8p. The also failed to evaluate whether Plaintiff's impairments were medically equal to Listings 107.03 and 107.05, and failed to properly evaluate the medical opinions of record. For all these reasons, the Court finds the ALJ's decision is not supported by substantial evidence, and should be remanded for further development consistent with this opinion.

### E.     Motion to Reopen

As her second and final point of error, Plaintiff asserts that the ALJ erred in failing to rule on her pre-hearing request to reopen T.D.F.'s prior application for SSI benefits in violation of the agency's internal procedures under HALLEX I-2-6- 52(A) & I-2-9-1.[7] The error was prejudicial, Plaintiff argues, because T.D.F. would be denied over 12 months of SSI benefits if his prior application is not reopened.  Alternatively, Plaintiff requests that the Court find that ALJ implicitly reopened the prior application by considering evidence since T.D.F.'s birth in May 2009, and award SSI benefits from the date of his first application, June 18, 2009.

The Commissioner correctly asserts in response that absent a colorable constitutional claim, this Court has no jurisdiction to review alleged abuses of agency discretion in refusing to reopen a prior claim.  *See Califano v. Sanders,* 430 U.S. 99, 107-09 (1977); *Robertson v. Bowen*, 803 F.2d 808 (5th Cir. 1986).  However, Plaintiff does

---

[7]HALLEX I-2-6-52 (E) provides in  part that the ALJ "should rule on the record regarding any prehearing requests or motions of the claimant or representative." HALLEX I-2-6-52 (S.S.A.), 1993 WL 643033. HALLEX I-2-9-1 states in relevant part:

> If an ALJ is issuing a decision on a current application, and the record shows that in connection with the current application the claimant did not specifically request reopening and revision of the prior determination or decision, but did allege an onset date of disability within the previously adjudicated period, the ALJ must consider the claimant's current application to be an implied request for reopening and revision of the determination or decision on the prior application.

HALLEX I-2-9-1 (S.S.A.), 1993 WL 643069.

not seek review of the ALJ's refusal to reopen T.D.F.'s prior application. She argues only that the ALJ failed to make a decision at all. The Court therefore finds that this matter should be remanded for a determination on the request to reopen the earlier application. Because the Court so finds, it need not address Plaintiff's alternative argument that the ALJ implicitly reopened this case by considering evidence from the prior application.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge, that this cause be remanded for further proceedings consistent with this opinion. Plaintiff's motion should be granted only to the extent that the case is remanded to the Commissioner; the Motion for an Order Affirming the Commissioner's Decision should be denied.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636.

This the 31st day of August 2015.

                                            /s/  Linda R. Anderson
                                  UNITED STATES MAGISTRATE JUDGE